UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARDAVAN ASLIE, M.D., | ) | |
| | ) | No. 25 CV 5678 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AMERICAN BOARD OF | ) | |
| ORTHOPAEDIC SURGERY, and | ) | |
| DOES 1-10, | ) | |
| | ) | April 21, 2026 |
| Defendants. | ) | |

MEMORANDUM OPINION and ORDER

Plaintiff brings this state law claim under diversity jurisdiction alleging that unnamed volunteers at Defendant American Board of Orthopaedic Surgery ("ABOS") conspired to ensure he failed his recertification examination in retaliation for his public criticism over the use of pedicle screws in spinal surgeries. Before the court is ABOS's motion for a protective order to prevent the disclosure of information that it has withheld pursuant to the Illinois Medical Studies Act (the "Act"), 735 ILCS 5/8-2101. For the following reasons, the motion is granted:

## Background

ABOS is the primary medical specialty board that assesses the credentials of orthopedic surgeons in the United States. (R. 31, Def.'s Mot. at 5.) ABOS seeks to "improve the quality of care and outcomes for patients" by establishing high standards for competence and continuing education for board-certified orthopedic surgeons. (Id.) For certification and recertification, ABOS relies on peer reviews

and continued examinations to evaluate whether a physician's practice and competence conform with ABOS's standards of care. (Id. at 5; R. 16, Ans. ¶¶ 13-14.) Many hospitals require ABOS certification for physicians to engage in orthopedic surgeries at their facilities. (R. 16, Ans. ¶ 11.)

Physicians seeking ABOS recertification must participate in its Maintenance of Certification process every 10 years. (Id. ¶ 13.) Recertification requires each ABOS-certified physician to complete continuing medical education programs, submit a Professional Standing Update for Recertification application, and pass a recertification examination. (Id.; R. 31, Def.'s Mot. at 2.) ABOS requires each application to include the names and contact information for practice partners, hospital chiefs, and other orthopedic surgeons familiar with the applicant's medical practice. (R. 31, Def.'s Mot. at 2.) ABOS then sends those professionals a peer review survey to collect ratings for the applicant across key areas, such as his or her patient care skills, surgical skills, behavior, and communication. (Id. at 2, 6.) ABOS invites additional comments from any negative peer reviewers and compiles this information into a Credentials Report. (Id. at 6.) ABOS's Credentials Committee then reviews this Credentials Report to determine the recertification pathway for that applicant. (Id.) ABOS relies on recertification to ensure that board-certified surgeons continue to provide safe, ethical, and effective orthopedic care for patients. (Id. at 3, 6-7.)

Plaintiff, an orthopedic spinal surgeon, first received ABOS certification in 2005, and then recertification in 2015. (R. 16, Ans. ¶¶ 11, 13.) According to

Plaintiff, he began publicly criticizing the use of pedicle screws in spinal surgeries starting in 2015. (R. 1, Compl. ¶¶ 19, 23-28.) He submitted a recertification application in 2023 identifying the required peer names and contact information, and ABOS solicited ratings and comments from those peers. (R. 16, Ans. ¶¶ 14-16; R. 31, Def.'s Mot. at 2-3.) Plaintiff alleges—and ABOS admits—that ABOS required Plaintiff to complete an oral recertification examination instead of the typical written examination because "questions were raised about" his medical practice since his 2015 recertification. (R. 16, Ans. ¶ 16.) Plaintiff did so but failed the examination, and he believes that ABOS deliberately failed him as retaliation for his public opposition to the use of pedicle screws. (R. 1, Compl. ¶ 18.)

Plaintiff served discovery requests on ABOS seeking documents concerning the Credentials Committee's decision to require Plaintiff to pass an oral reexamination during his 2023 recertification. (R. 31, Def.'s Mot. at 3.) In response, ABOS produced Plaintiff's Credentials Report with redactions on three pages, reflecting peer reviews and feedback. (Id. at 3-4; see also R. 31-1, Credentials Rep. at 1-2, 7.) Plaintiff demanded that ABOS produce the Credentials Report without redactions, and ABOS filed this motion to prevent such disclosure pursuant to the Act. In the alternative, ABOS argues that Plaintiff agreed to the confidentiality provisions in the recertification application waiving his right to access peer reviews. (R. 29, Jt. Status Rep. at 2; R. 31, Def.'s Mot. at 1, 7-8.) Plaintiff disagrees. (R. 33, Pl.'s Resp. at 2-3).

**Analysis**

ABOS seeks to withhold as privileged the following portions of Plaintiff's Credentials Report: (1) the names of the peer physicians and their comments about Plaintiff, (R. 31-1, Credentials Rep. at 1-2); and (2) identifying information of each physician who reviewed Plaintiff, as well as ratings for Plaintiff across key areas relevant to his professional competence, such as surgical skills, communication skills, behavior, and integrity, (id. at 1-2, 7 (citing documents Bates stamped ABOS000110, ABOS000111, and ABOS000116)). (See R. 31, Def.'s Mot. at 4.) The parties do not dispute the relevance of the redacted portions in the Credentials Report,[1] and instead focus on whether the Act allows the redactions.

"Federal Rule of Civil Procedure 26 generally allows for broad discovery into matters that are or could be relevant, while permitting court intervention when discovery is too sweeping or unduly burdensome." *Aharon v. Babu*, No. 22 CV 4502, 2023 WL 12037914, at *1 (N.D. Ill. Sept. 13, 2023). Rule 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." And Rule 26(c)(1)(D) specifies that a protective order may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." The party seeking a protective order bears the burden of demonstrating that good cause exists, and this court has the discretion to determine whether a protective order is

---

[1] Having performed an *in camera* review of the redacted portions ABOS withheld, the court notes that they provide minimal support, if any, for Plaintiff's claim that ABOS sabotaged Plaintiff's recertification because of his criticism of pedicle screws.

warranted and the level of such protection. *Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, No. 17 CV 5826, 2018 WL 11355025, at *2 (N.D. Ill. Oct. 9, 2018) (citation and quotation omitted).

When a court sits in diversity, as this court does here, Federal Rule of Evidence 501 provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Plaintiff has asserted state law claims against ABOS, and the parties do not dispute that Illinois law governs the subject privilege issue. (R. 31, Def.'s Mot. at 4-5; R. 33, Pl.'s Resp. at 2.) Accordingly, the court applies Illinois law to the privilege ABOS has asserted. *See, e.g., Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 794 (N.D. Ill. 2015) (applying Illinois privilege law where parties agreed that Illinois law applied).

## A.     Illinois Medical Studies Act

Illinois passed the Act "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 40 (1993). The Act "is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Willis v. Highland Med. Ctr.*, 2019 IL App (1st) 181541-U, ¶ 17 (citing *Roach*, 157 Ill. 2d at 40). The Act provides in relevant part:

> All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of . . . allied medical societies . . . or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees,

5

> Credential Committees and Executive Committees . . . used in the course of internal quality control . . . for the purpose of . . . improving patient care . . . shall be privileged, strictly confidential and shall be used only for . . . the evaluation and improvement of quality care . . . .

735 ILCS § 5/8-2101. As such, the Act "protects the records, reports, notes, and the like, of . . . medical societies, and other review groups used in the course of internal quality control or medical study for the purpose of . . . improving patient care." *Buechel v. United States*, 08 CV 132, 2010 WL 3613930, at *1 (S.D. Ill. Sept. 8, 2010) (citing 735 ILCS 5/8-2101).

The Act further provides that "such information . . . shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency, or person." 735 ILCS § 5/8-2102. "The party asserting the privilege may support its claim either by submitting the withheld documents for *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the Act to the withheld documents." *Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12 CV 1675, 2014 WL 4817806, at *3 (N.D. Ill. Sept. 15, 2014) (citing *Ardisana v. Nw. Cmty. Hosp., Inc.*, 342 Ill. App. 3d 741, 748 (1993)). Here, the court ordered the unredacted version of the subject documents for *in camera* inspection. (R. 37, April 6, 2026 Order.)

Before turning to the court's review of Plaintiff's Credentials Report, the court finds that ABOS is an "allied medical societ[y]" within the scope of the Act. 735 ILCS § 5/8-2101. The Illinois Supreme Court has interpreted this term to include "those medical societies which are closely related to the purposes of the Act, *i.e.*, those medical societies that engage in studies or programs designed to further

6

the purposes of the Act." *Niven v. Siqueira*, 109 Ill. 2d 357, 366 (1985). In applying this interpretation, the *Niven* court held that the Joint Commission on Accreditation of Hospitals ("Joint Commission") fell under the Act because "a common understanding of the term 'medical society'" would "certainly include the Joint Commission, which is, as its name implies, a joint undertaking of several established medical societies," and the withheld materials were collected "as part of a [hospital accreditation] program designed to improve quality control and patient care" within the purposes of the Act. *Niven*, 109 Ill. at 366; *accord Mnookin v. Nw. Cmty. Hosp.*, 2018 IL App (1st) 171107, ¶¶ 34-35 (protecting from disclosure third-party reports the Joint Commission held).

Likewise, ABOS is a "legitimate medical society" under the Act based on a "common understanding of the term," *Niven*, 109 Ill. at 366-67, as it is the primary medical specialty board assessing orthopedic surgeons' credentials, qualifications, and practice performance and hospitals may rely on such information when granting physicians practice privileges, (R. 31, Def.'s Mot. at 3, 5 (further explaining that ABOS consists of practicing orthopedic surgeons and a board of directors); see also R. 16, Ans. ¶ 11). Additionally, the ABOS recertification program furthers the Act's purpose, as it seeks to improve orthopedic patient care and quality by ensuring physician competence and conformity to industry-accepted standards of care. (See, e.g., R. 31, Def.'s Mot. at 2, 5-6 (describing ABOS's mission as seeking to "improve the quality care and outcomes for patients" by "establish[ing] and

7

maintain[ing] high standards for competence and lifelong education of board certified orthopaedic surgeons").)

Turning to the court's *in camera* review of Plaintiff's Credentials Report, the court finds that the Act applies to the redactions. The Illinois Supreme Court has held that statutorily protected "materials in the hands of any legitimate medical society are protected by the Act so long as those materials were used as part of a study or program to improve quality control or patient care or reduce morbidity or mortality." *Niven*, 109 Ill. at 366. The redacted portions of Plaintiff's Credentials Report qualify as such "materials."

For starters, the redacted portions constitute a statutorily protected category of information because they consist of "third party confidential assessments of a health care practitioner's professional competence." 735 ILCS § 5/8-2101. Indeed, the redacted portions include peer physician names, survey responses, and comments ABOS solicited regarding Plaintiff's patient care skills, surgical skills, behavior, and communication. Furthermore, ABOS used Plaintiff's Credentials Report as part of a program to improve quality control and patient care. Specifically, ABOS solicited the reviews as part of its required 10-year recertification—relied on by some hospitals in granting physician practice privileges—to ensure that Plaintiff continued to provide adequate care to orthopedic patients. *See Niven*, 109 Ill. at 361, 364, 366 (protecting from disclosure peer surveys and interviews collected by medical society to "promot[e] efficient, high

quality patient care" and "recognize compliance with their standards by issuance of certificates of accreditation").

Contrary to Plaintiff's assertion that "third-party statements" fall outside the scope of the Act, (R. 33, Pl.'s Resp. at 3), Illinois courts have held that similar peer reviews are privileged when a statutorily protected entity prepared them to further the Act's purposes. For example, in *Willis*, 2019 IL App (1st) 181541-U, ¶¶ 23-27, the Illinois appellate court held that peer comments and letters of reference a hospital credentials committee solicited to evaluate a physician's professional qualifications for re-credentialing "clearly fell" within the Act's protection as "third party confidential assessments of a health care practitioner's professional competence" used to improve quality control and patient care. The peer reviews in Plaintiff's Credentials Report similarly qualify as protected "third party assessments" an allied medical society solicited to improve quality control and patient care. *See also, e.g., Klaine v. S. Ill. Hosp. Servs.*, 2014 IL App (5th) 130356, ¶¶ 22-24 (applying the Act to peer reviews a hospital committee collected to evaluate a physician's application for staff privileges), *aff'd*, 2016 IL 118217; *Toth v. Jensen*, 272 Ill. App. 3d 382, 386 (1995) (applying the Act to peer reviews in physician's personnel file a hospital credential committee used to evaluate a physician's staff reappointment); *Stricklin v. Becan*, 293 Ill. App. 3d 886, 888 (1997) ("To the extent [the third-party letter a peer physician authored] constitutes a 'letter of reference' or 'third-party confidential assessment' of [the physician]'s 'professional competence,' it is privileged from disclosure.").

9

Protection for the peer ratings and comments in Plaintiff's Credentials Report aligns with the Act's purpose "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach*, 157 Ill. 2d at 40. Absent this privilege, physicians who are in a position to submit reviews of Plaintiff's medical practice may "be reluctant to . . . engage in frank evaluations of their colleagues," *Willis*, 2019 IL App (1st) 181541-U, ¶ 17 (citing *Roach*, 157 Ill. 2d at 40), and ABOS would lose valuable insight into the level of care Plaintiff renders to his patients. The Act covers the redacted portions of Plaintiff's ABOS Credentials Report, and as such, good cause exists to prevent their disclosure.

## B. Exception to the Illinois Medical Studies Act

Although the parties did not address the exception to the general protection, for the sake of completeness the court finds that no exception to the Act applies to Plaintiff's situation. The Act provides that a physician may access otherwise protected information from "any health maintenance organization proceeding to decide upon a physician's services or any hospital or ambulatory surgical treatment center proceeding to decide upon a physician's staff privileges, or in any judicial review of either." *See* 735 ILCS 5/8-2101. While Plaintiff appears to raise the possibility that a failed recertification will adversely impact his staff privileges at certain hospitals, (R. 1, Compl. ¶¶ 11, 32), Plaintiff's discovery request does not fall within the Act's exception because ABOS is not in the business of approving or revoking staff privileges, *see Jenkins v. Wu*, 102 Ill. 2d 468, 478-79 (1984)

10

(explaining that this exception protects a physician's due process rights when challenging revocation of hospital privileges where peer review information was the basis for such revocation (citing 735 ILCS 5/8-2101)).

Additionally, the materials ABOS controls do not fall within the exception because it does not apply to "allied medical societies." Statutory interpretation guides this court's inquiry and requires it "to ascertain and give effect to the true intent of the legislature" as best evidenced by "the language used in the statute itself." *Ill. State Treasurer v. Ill. Workers' Comp. Comm'n*, 2015 IL 117418, ¶¶ 20-21. "Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions," especially where the same terms appear in different parts of the statute. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-53 (1997). Here, ABOS is not one of the enumerated entities (*i.e.*, "health maintenance organization," "hospital," or "ambulatory surgical treatment center"). *See* 735 ILCS 5/8-2101. Had the Illinois legislature intended for this exception to apply to "allied medical societies," it would have listed them in the provision, but it did not despite including them in an earlier provision. Thus, this court is "not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Ill. State Treasurer*, 2015 IL 117418, ¶¶ 21, 27-28 (finding that a bond exemption provision did not apply to the state treasurer, who was not listed among the enumerated entities); *see also Aldridge*, 179 Ill. 2d at 151-53 ("The legislature's

11

use of certain language in one instance and different language in another indicates that the legislature intended different results.").[2]

## Conclusion

For the foregoing reasons, ABOS's motion for protective order is granted.

**ENTER:**

_____

**Young B. Kim**
**United States Magistrate Judge**

---

[2] Because the court finds that the Act protects the redacted portions of Plaintiff's Credentials Report from disclosure, the court declines to rule on the issue of whether the confidentiality provisions in Plaintiff's recertification application serves as a waiver of the right to access the same. (See R. 31, Def.'s Mot. at 7-8; R. 33, Pl.'s Resp. at 3.)

12